ROBERTS, SHERIFF, *v.* FEDERAL LAND BANK OF NEW ORLEANS.

(Division B.   June 10, 1940.   Suggestion of Error Affirmed as Modified, Sept. 10, 1940.)

[196 So. 763.   No. 34205.]

Russell Wright, Assistant Attorney-General, for appellant.

**W. E. Gore**, of Jackson, amicus curiae.

E. F. Steiner, Beverly C. Adams, and **T. H. Hedgpeth,** all of New Orleans, La., for appellee.

Argued orally by **Russell Wright**, for appellant, by **W. E. Gore**, amicus curiae, and by **E. F. Steiner**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

The appellant, John W. Roberts, Sheriff of Hinds County, Mississippi, demanded of the Federal Land Bank of New Orleans privilege taxes upon certain motor vehicles operated in the State, which tax was imposed by Chapter 148, Laws of 1938. The Federal Land Bank paid the taxes under protest, and this suit was brought for the purpose of recovering the money so paid.

The declaration set forth that privilege taxes, includ-

ing accrued penalties, also license plates, were paid for ten automobiles, totaling $131.37, which amount was paid by the bank under protest. The bank owned and operated the ten automobiles over the public highways in the State of Mississippi in carrying on the business of the Federal Land Bank exclusively; as contemplated and prescribed by the Act of Congress creating the bank as an instrumentality of the United States Government and not subject to taxation by the State. The Act specifically provides that: ''Every Federal land bank and every national farm loan association, including the capital and reserve or surplus therein and the income derived therefrom, shall be exempt from Federal, State, municipal, and local taxation, except taxes upon real estate held, purchased, or taken by said bank or association under the provisions of sections 761 and 781 of this chapter. First mortgages executed to Federal land banks, or to joint stock land banks, and farm loan bonds issued under the provisions of this chapter, shall be deemed and held to be instrumentalities of the Government of the United States, and as such they and the income derived therefrom shall be exempt from Federal, State, municipal, and local taxation.'' 12 U. S. C. A., sec. 931.

A plea of the general issue was filed to the declaration, and the case was tried upon an agreed statement of facts which, in substance, is as follows: The appellee is a corporation, organized and operating under and in accordance with the Federal Farm Loan Act, and acts amendatory and supplementary thereto, doing business in the State of Mississippi. (Copy of the charter being attached to the statement.) That 77.1% of the capital stock is owned by the United States Government, 19.5% by the national farm loan associations, and 3.4% by individual farmers who are borrowers by means of direct loans, as authorized and defined by the Federal Farm Loan Act and amendments thereto. 12 U. S. C. A., sec. 641 et seq. That, the bank has the power to borrow money, enter into contracts, pay interest, loan money, re-

ceive interest, pay expenses and commissions of agents, pay dividends on its stock and acquire and dispose of property in its own right; to invest any funds in its possession in the purchase of first mortgages on farm lands situated within the Federal Land Bank district, to charge reasonable fees not exceeding the actual cost of appraisal and determination of title on lands on which loans are made, and to charge the same against the borrower, and does all of these things in furtherance of its business. That, the appellee owns in fee-simple title 77,357.96 acres of land in the State of Mississippi, about 75% being leased to tenants; and that they also hold first mortgage loans on land in the State. That, the appellant is the duly elected, qualified and acting sheriff and tax collector of Hinds County, Mississippi. That, in its ordinary conduct of business the bank owns and operates on and over the public highways of the State ten automobiles, which are listed in the declaration. That, some of these cars are used by the bank's appraisers in their work of appraising farm properties in Mississippi, on which applications for loans have been made to the bank through the national farm loan association, in the counties from which applications are made, and also in appraising farm properties which the bank has acquired through foreclosure. Other cars are used by field men, regularly employed, in negotiating sales of bank-owned properties and making collections due the bank, and such other duties as from time to time may be assigned to them.

It is the contention of the bank that neither it nor the automobiles are subject to privilege taxes; but that the state authorities have contended that they are not exempt, and acting in pursuance of advice of the attorney general, required the bank to pay the privilege license tax on the automobiles; and, advised the bank that unless such taxes were paid that the automobiles would be impounded and the drivers of the automobiles arrested. Thereupon, the bank paid the sheriff $131.37, and at that time made both verbal and written protest; and, the

money is now held by the sheriff, not having been paid into any public treasury, pending this litigation.

The suit was brought in the county court, where the contention of the defendant was sustained; and appeal from this verdict was made to the Circuit Court of the First District of Hinds County, Mississippi, where judgment of the county court was reversed and the court rendered judgment for the bank, awarding recovery of the money so paid to the sheriff, from which judgment this appeal is prosecuted. Many questions are presented and argued in the case on appeal, but we think it unnecessary to discuss all of them. We therefore pretermit discussion or decision of whether the Federal Land Bank comes within the purposes and meaning of the said Chapter 148 of the Laws of 1938, in which the term ''person'' is defined; and, Section 7 of which contains this provision: ''There shall also be one class of tags designated as 'tax free tags' for use on motor vehicles belonging to the state of Mississippi, or any of its subdivisions, and to the United States or any of its subdivisions. Tax free tags shall, in addition to 'Miss.,' and the year for which issued, bear the word 'tax free.' When any motor vehicle for which a 'tax free' tag has been issued, is sold or traded, and becomes the property of some person who would be liable to pay the privilege thereon, report of such sale shall be made immediately to the commissioner, by the proper person, and the tag shall be delivered to the commissioner.''

Assuming, for the purposes of this decision, that it was the intention of the Mississippi Legislature to tax automobiles owned and operated by the Federal Land Bank for the privilege of using the highways of the State, we come directly to the question as to whether the Congress has prohibited state and local taxation upon such motor vehicles, as shown in the agreed statement of facts. It will be noted from reading Chapter 148, Laws of 1938, that the tax is not determined by the extent to which the highways of the State are used, but is de-

termined by the horsepower, weight and other characteristics of the automobile; and, when the privilege tax is paid, the person paying it is permitted the use of the highways in the state without restriction except for the period of time covered by the license. It is true that under the Laws of Mississippi, the privilege tax on automobiles is described as being for the use of the roads, but nevertheless it is a tax as distinguished from a toll. In other words, it is not a charge for the use of a particular highway at a particular time, but is for the use of any and all highways of the State during a prescribed period of time, without regard to the use. It is also true that the tax so collected is not used in the construction and repair of highways maintained by the United States and the State of Mississippi jointly, but the fund is used for county roads which are not under the jurisdiction of the State Highway Commission, and which the United States Government does not aid in the construction. The privilege tax is therefore a tax and not a toll; and it is not an exercise of the police power of the State in the legal sense of the term "police power," as distinguished from the term "taxing power."

It is settled law in both the United States and the State of Mississippi that Federal Land Banks are agencies and instrumentalities of the United States Government. See Smith v. Kansas City Title & Trust Co., 255 U. S. 180, 41 S. Ct. 243, 65 L. Ed. 577; Federal Land Bank of St. Louis v. Priddy, 295 U. S. 229, 55 S. Ct. 705, 79 L. Ed. 1408; Federal Land Bank of New Orleans v. Tatum, 174 Miss. 264, 164 So. 319; Craig v. Federal Land Bank of New Orleans, Miss., 194 So. 589. In some of the earlier decisions of the United States Supreme Court, a distinction is made between the functions of a federal instrumentality or agency, in the discharge of its public functions, and that of private business. It is now settled by the United States Supreme Court that agencies of the United States Government can perform only governmental and not proprietary functions, and that all of its

acts are necessarily governmental, and therefore public. See Graves v. O'Keefe, 306 U. S. 466, 493, 59 S. Ct. 595, 83 L. Ed. 927, 120 A. L. R. 1466; State Tax Commission of Utah v. Van Cott, 306 U. S. 511, 59 S. Ct. 605, 83 L. Ed. 950; and the late case of Pittman v. H. O. L. C. of Washington, D. C., 308 U. S. 21, 60 S. Ct. 15, 84 L. Ed. 11, 124 A. L. R. 1263. In this latter case, it was held that the Congress has constitutional authority to provide that a corporation created by it, such as the H. O. L. C. (including loans made and mortgages held by such corporation) shall be exempt from state and municipal taxation. It was also held that the activities of a corporation, through which the National Government lawfully acts, must be regarded as a governmental function, and such corporation or agency is entitled to immunity as if the functions were performed by the Government itself, through its departments. It was still further held that the Congress has the power not only to create a corporation for the performance of governmental functions, but also to protect the operations thus validly authorized; and, in the exercise of this power to protect the lawful activities of its agencies, Congress has that dominant authority which necessarily inheres in its action within the national field. In this case, the court adhered to its former decision in Federal Land Bank v. Crosland, 261 U. S. 374, 43 S. Ct. 385, 67 L. Ed. 703, 29 A. L. R. 1.

It thus appears from the most recent decisions of the United States Supreme Court, to which our attention has been called, that the Congress not only has the power to create a corporation to further the exercise of its governmental power, but when it is so created by the Congress, such corporation becomes an instrumentality of the Government and all of its actions or functions are governmental, although they may have characteristics of private corporations and engage in a business which would ordinarily be of a private nature. It further has the full and plenary power above state laws and regulations to protect agencies from taxation or control. In the case

of Pittman v. H. O. L. C., supra, it was undertaken to distinguish that case from a prior case, Federal Land Bank v. Crosland, supra, but the court held that there was no substantial distinction and that it was not within the legislative authority to require the H. O. L. C. to pay a mortgage tax, where such payment was necessary, if valid, to protect the mortgage from subsequent purchasers or encumbrancers without notice. The court said [308 U. S. 21, 0 S. Ct. 17, 84 L. Ed. 11, 124 A. L. R. 1263]:

"The second suggested distinction rests upon the terms of the Home Owners' Loan Act. That provides that the Home Owners' Loan Corporation, its franchise, capital, reserves and surplus, and its loans and income shall be exempt from all state or municipal taxes. The critical term, in the present relation, is 'loans.' We think that this term, in order to carry out the manifest purpose of the broad exemption, should be construed as covering the entire process of lending, the debts which result therefrom and the mortgages given to the Corporation as security. The Home Owners' Loan Act requires that the loans made by the Corporation 'shall be secured by a duly recorded home mortgage.' Both the mortgage and its recordation were indispensable elements in the lending operations authorized by Congress. We agree with the state court that there is no sound distinction which makes inapplicable the reasoning which was decisive in the Crosland case.

"Alive to this consideration, petitioner advances a broader contention, asking us to review and overrule the Crosland decision as being out of harmony with correct principle. Petitioner insists that the tax is not discriminatory; that it does not impose a burden upon the Home Owners' Loan Corporation; and that if the Act of Congress be construed as conferring an immunity, it went beyond the power of Congress, as Congress cannot 'grant an immunity of greater extent than the constitutional immunity.'

"We assume here, as we assumed in Graves v. New

York ex rel. O'Keefe, 306 U. S. 466, 59 S. Ct. 595, 83 L. Ed. 927, 120 A. L. R. 1466, that the creation of the Home Owners' Loan Corporation was a constitutional exercise of the congressional power and that the activities of the Corporation through which the national government lawfully acts must be regarded as governmental functions and as entitled to whatever immunity attaches to those functions when performed by the government itself through its departments. [Citing authorities.] Congress has not only the power to create a corporation to facilitate the performance of governmental functions, but has the power to protect the operations thus validly authorized. 'A power to create implies a power to preserve.' McCulloch v. Maryland, supra, 4 Wheat. [316] page 426, 4 L. Ed. [579] 606. This power to preserve necessarily comes within the range of the express power conferred upon Congress to make all laws which shall be necessary and proper for carrying into execution all powers vested by the Constitution in the Government of the United States. . . .''

The Congress, having the power to protect an agency created by it, which has been held to be constitutional in prior decisions, had the power to and did exempt the Federal Land Bank from taxation by the several states. 12 U. S. C. A., Section 931. The substance of which is quoted above. From these decisions, by the court whose authority is final in such matters, we are forced to the conclusion that the court below was correct in rendering for plaintiff Land Bank a judgment for its demand recovering the taxes paid under protest; and the judgment of the court below is affirmed.

Affirmed.